**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DANIEL L. T., | ) | NO. CV 20-3651-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PROCEEDINGS**

Plaintiff filed a complaint on April 20, 2020, seeking review of the Commissioner's denial of benefits. On May 18, 2020, the parties consented to proceed before a United States Magistrate Judge. Plaintiff filed a motion for summary judgment on October 14, 2020. Defendant filed a motion for summary judgment on November 16, 2020. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed April 22, 2020.

///

///

**BACKGROUND**

Plaintiff asserted disability since December 10, 2015, based on allegations of congestive heart failure and cardiomyopathy (Administrative Record ("A.R.") 124-26, 142).  An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 11-19, 30-46).  The ALJ found that Plaintiff has severe "cardiomyopathy status post automated implantable cardioverter defibrillator ("AICD") placement," but retains the residual functional capacity for a limited range of light work (A.R. 13, 15). According to the ALJ, Plaintiff is limited to standing and walking four hours in an eight-hour day, sitting six hours in an eight-hour day, no climbing ladders, ropes or scaffolds, occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling, frequent fine and gross manipulation, and no exposure to unprotected heights or dangerous machinery (A.R. 15-18 (giving great weight to consultative examiner's opinions)).

Treating cardiologist Dr. Mohammad Pashmforoush had provided a "Medical Source Statement, etc.," opining that Plaintiff would have restrictions largely consistent with the ALJ's residual functional capacity determination (A.R. 308-17).  However, this "Medical Source Statement, etc." also included opinions that Plaintiff would require an assistive device for occasional standing and walking, would be unable to keep his neck in a constant position, and would have two to three impairment-related work absences per month (A.R. 308-17).  The ALJ gave "little weight" to these more restrictive limitations, finding the limitations to be "unsupported by any detailed medical

1  findings" (A.R. 17).

2

3      The ALJ identified certain light work jobs Plaintiff assertedly

4  could perform.  See A.R. 18-19 (adopting vocational expert testimony

5  at A.R. 39-40).  Thus, the ALJ denied benefits (A.R. 19).  The Appeals

6  Council denied review (A.R. 1-4).

7

8                          **STANDARD OF REVIEW**

9

10      Under 42 U.S.C. section 405(g), this Court reviews the

11  Administration's decision to determine if: (1) the Administration's

12  findings are supported by substantial evidence; and (2) the

13  Administration used correct legal standards.  See Carmickle v.

14  Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

15  499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner,

16  682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such

17  relevant evidence as a reasonable mind might accept as adequate to

18  support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

19  (1971) (citation and quotations omitted); see also Widmark v.

20  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

21

22      If the evidence can support either outcome, the court may

23      not substitute its judgment for that of the ALJ.  But the

24      Commissioner's decision cannot be affirmed simply by

25      isolating a specific quantum of supporting evidence.

26      Rather, a court must consider the record as a whole,

27      weighing both evidence that supports and evidence that

28      detracts from the [administrative] conclusion.

3

1   <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and

2   quotations omitted).

3

4                              **DISCUSSION**

5

6       After consideration of the record as a whole, Plaintiff's motion

7   is denied and Defendant's motion is granted.   The Administration's

8   findings are supported by substantial evidence and are free from

9   material[1] legal error.   Plaintiff's contrary arguments are unavailing.

10

11  **I.    Summary of the Record**

12

13      **A.    Plaintiff's Medical Records**

14

15      Plaintiff was hospitalized in December of 2015 for chest pain and

16  weakness from cardiomyopathy with a history of SVT (supraventricular

17  tachycardia), COPD (chronic obstructive pulmonary disease) secondary

18  to smoking, and methamphetamine abuse (A.R. 192-226).   At the time of

19  his admission, Plaintiff had an ejection fraction of 35 (A.R. 195,

20  216-17).   Plaintiff admitted having used methamphetamine two hours

21  prior to experiencing palpitations (A.R. 210).   Laboratory testing was

22  positive for amphetamines, opiates and THC (A.R. 202, 210-11, 222).

23  Plaintiff was diagnosed with severe cardiomyopathy likely secondary to

24  drug use (A.R. 195).   He was prescribed medications and a "Life Vest"

25

26  _____

27          [1]    The harmless error rule applies to the review of
    administrative decisions regarding disability.   <u>See</u> <u>Garcia v.</u>
    <u>Commissioner</u>, 768 F.3d 925, 932-33 (9th Cir. 2014); <u>McLeod v.</u>
28  <u>Astrue</u>, 640 F.3d 881, 886-88 (9th Cir. 2011).

                                    4

1  (a defibrillator vest also known as a "Zoll Vest," <u>see</u> A.R. 234), and

2  Plaintiff also was ordered to avoid cigarettes, methamphetamine and

3  other drugs (A.R. 197, 229-33).   Later in December, Plaintiff went to

4  another hospital, complaining of chest pain for which he was given

5  medications (A.R. 227-28).

6

7        Plaintiff followed up for periodic cardiology treatment with Dr.

8  Pashmforoush, who treated Plaintiff from February of 2016 through at

9  least November of 2018 (A.R. 234-48, 300-07).   Initially, Plaintiff

10  reportedly had experienced a recent Zoll Vest shock and had an

11  ejection fraction of 20 percent, suggesting heart failure (A.R. 234).

12  Plaintiff claimed that he recently had stopped abusing drugs and he

13  claimed he was experiencing shortness of breath when he walked two

14  blocks (A.R. 234-35).   Dr. Pashmforoush ordered testing, added one

15  medication, and noted that Plaintiff was not a candidate for an AICD

16  implant because of his drug use (A.R. 236).   However, by March of

17  2016, Dr. Pashmforoush had scheduled Plaintiff for an AICD implant

18  (A.R. 240).

19

20        When Plaintiff followed up in April of 2016, he had undergone

21  ablation and AICD implantation and he had run out of his medications

22  (A.R. 241).   Plaintiff reported still suffering from shortness of

23  breath on exertion and episodes of palpitations which showed as sinus

24  tachycardia with heart rates exceeding 165 beats per minute (A.R.

25  243).   Dr. Pashmforoush changed Plaintiff's medications (A.R. 244).

26

27        Later in April, Plaintiff reported that he could not tolerate the

28  higher medication dosage prescribed, and Plaintiff said he had

developed significant fatigue and shortness of breath (A.R. 245).
Plaintiff reportedly had not had any episodes of arrhythmia since his
last visit (A.R. 245).  Dr. Pashmforoush adjusted Plaintiff's
medications (A.R. 246).

When Plaintiff returned in July of 2016, he reported fatigue and
having no energy, but Plaintiff then was free from palpitations or any
lower extremity edema (A.R. 247).  He reportedly was stable with no
worsening heart failure (A.R. 247).  "Interrogation of his AICD"
showed normal function with some episodes of sinus tachycardia (A.R.
248).  Dr. Pashmforoush indicated that Plaintiff has "intractable
heart failure" and the doctor sought authorization to prescribe
"Entresto" (A.R. 248).

The next treatment note is from December of 2017, when Plaintiff
reported that he had not had any shocks or significant shortness of
breath (A.R. 300).  His AICD was functioning normally with stable
results (A.R. 301).  Dr. Pashmforoush noted that Plaintiff then was
showing no signs of heart failure (A.R. 301).[2]

///

///

---

[2]   A primary care treatment note from December of 2017,
reports that Plaintiff admitted smoking heavily and using
methamphetamine since age 17 (A.R. 268-69).  He reportedly then
denied shortness of breath (A.R. 269).  Plaintiff had presented
to this provider in 2016 and 2017 with complaints of leg pain and
swelling, for which he was given Gabapentin and compression
stockings (A.R. 280-87).  A bilateral lower extremity ultrasound
was normal (A.R. 298-99).  He claimed in February of 2016 that he
had been clean from methamphetamine since November of 2015 when
he went to the emergency room (A.R. 288).

In March of 2018, Plaintiff reportedly had no chest pain or shortness of breath (A.R. 303).  He then had an ejection fraction of 60 percent (A.R. 304).  Dr. Pashmforoush again indicated that Plaintiff did not have any current evidence of heart failure and stated that Plaintiff's ejection fraction had markedly improved (A.R. 304).  Plaintiff reportedly then was abstaining from drug use (A.R. 304).

When Plaintiff returned in November of 2018, however, Plaintiff admitted that he was using methamphetamine, was not taking his medications, and was having fatigue with lack of energy and shortness of breath (A.R. 306-07).  Dr. Pashmforoush indicated that he could see multiple episodes of tachycardia from Plaintiff's AICD (A.R. 307).  Dr. Pashmforoush recommended that Plaintiff comply with the prescribed treatment (A.R. 307).[3]

Throughout Dr. Pashmforoush's treatment in 2016, the doctor observed that Plaintiff walked normally in the examination room (A.R. 235, 238, 240, 242, 244, 246, 247).  At a December, 2016 psychiatric evaluation, Plaintiff also was observed to have a normal gait without the use of an assistive device (A.R. 254).  There are no later notations concerning Plaintiff's ambulation.  See A.R. 300-07.

///

---

[3]     At the administrative hearing on December 18, 2018, Plaintiff testified that he had not worked since 2004 because he did not have good luck finding jobs (A.R. 34-35).  However, Plaintiff admitted that he had been using drugs for 25 to 30 years, and he also agreed that his drug usage probably explained why he did not work (A.R. 35).  Plaintiff admitted that he still used methamphetamine up to four times a week (A.R. 41-43).

1        **B.    <u>Opinion Evidence</u>**

2

3        Consultative examiner Dr. Jay Dhiman prepared an "Internal

4   Medicine Evaluation," dated December 21, 2016 (A.R. 261-65).  Dr.

5   Dhiman reviewed Dr. Pashmforoush's February, 2016 evaluation (A.R.

6   261).  Plaintiff claimed congestive heart failure with shortness of

7   breath, and the ability to walk only one to two blocks because of pain

8   in his lower legs without swelling (A.R. 261).  Plaintiff admitted a

9   longstanding history of drinking alcohol, but did not then mention his

10  longstanding history drug abuse (A.R. 261).  Examination was normal

11  but for notations of diffuse and laterally displaced "PMI" (point of

12  maximal impulse), multiple missing teeth and trace lower leg edema

13  (A.R. 262-64).  Plaintiff's gait was normal, with no need for an

14  assistive device (A.R. 264).  An EKG was normal (A.R. 264).  Dr.

15  Dhiman opined that Plaintiff was capable of light work, standing and

16  walking four hours in an eight hour day, sitting without limitations,

17  and frequent manipulations, bending, crouching and stooping (A.R.

18  265).

19

20       State agency physicians reviewed the records as of January of

21  2017, and found, consistent with the opinions of the consultative

22  examiner, that Plaintiff was capable of light work with the

23  limitations the ALJ found to exist (A.R. 48-59).

24

25       Dr. Pashmforoush signed a "Medical Source Statement Concerning

26  Drug and/or Alcohol Abuse" dated May 8, 2017 (at a time when Plaintiff

27  claimed to be abstaining from methamphetamine (A.R. 267; <u>see</u> A.R.

28  276).  Therein, Dr. Pashmforoush stated:

1    Due to the claimant's medical conditions, it is my
2    reasonable medical opinion that the claimant is unable to
3    work on a sustained basis at this time and can be expected
4    to be unable to do so for at least the next 12 months.  This
5    is due to the claimant's underlying medical conditions,
6    which are disabling on their own without consideration for
7    any drug and/or alcohol abuse.  Absent any drug and/or
8    alcohol abuse, the patient would still be unable to perform
9    any work on a sustained basis.

10

11   (A.R. 267).  Dr. Pashmforoush also completed a "Medical Source
12   Statement, etc." (A.R. 308-11).  Although this statement is undated,
13   one can determine from the context that the doctor completed the
14   statement in or after November of 2018.  The statement indicates that
15   the doctor treats Plaintiff every four months for congestive heart
16   failure, and most recently had treated Plaintiff in November of 2018
17   (A.R. 308).  As noted above, at this last visit Plaintiff had admitted
18   to Dr. Pashmforoush that Plaintiff was using methamphetamine regularly
19   (A.R. 306).  Dr. Pashmforoush reported that Plaintiff has shortness of
20   breath, chest pain at 8/10, and fatigue at 10/10, with a supposedly
21   poor prognosis (A.R. 308).

22

23       In the statement, Dr. Pashmforoush opined that Plaintiff could
24   rarely lift 20 pounds, occasionally lift 10 pounds, sit for six hours
25   in an eight-hour day (not continuously), and stand and walk for four
26   hours in an eight-hour day (A.R. 309).  Dr. Pashmforoush indicated
27   that Plaintiff could never climb ramps, stairs or ladders, rarely
28   balance, occasionally kneel and crawl, and frequently stoop and crouch

(A.R. 310).  Dr. Pashmforoush answered "yes" that Plaintiff would have limitations with repetitive handling, reaching, fingering or lifting, supposedly must use a cane or other assistive device for occasional standing/walking, and that Plaintiff's condition would interfere with the ability to keep his neck in a constant position (A.R. 309).  Dr. Pashmforoush changed his answer from "yes" to "no" regarding whether Plaintiff could do a full time competitive job that requires "that activity" (presumably keeping the neck in a constant position) on a sustained basis (A.R. 309-10, 312, 315).  Dr. Pashmforoush opined that Plaintiff would be absent from work approximately two to three times per month due to his impairment(s) or treatment (A.R. 311).

**II.   Substantial Evidence Supports the Conclusion that Plaintiff is Not Disabled.**

     Substantial evidence supports the ALJ's conclusion Plaintiff is not disabled.  The ALJ properly relied on Dr. Dhiman's opinions, the state agency physicians' opinions, and portions of Dr. Pashmforoush's opinions in determining Plaintiff has the residual functional capacity for a narrowed range of light work.  See A.R. 17-18.  These opinions constitute substantial evidence supporting the ALJ's non-disability determination.  See Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (opinion of examining physician based on independent clinical findings can provide substantial evidence to support administrative conclusion of non-disability); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence "because it rests on his own independent examination"; opinion of non-examining physician "may constitute

substantial evidence when it is consistent with other independent
evidence in the record"); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th
Cir. 1995) (where the opinions of non-examining physicians do not
contradict "all other evidence in the record" an ALJ properly may rely
on these opinions) (citation and emphasis omitted).

The vocational expert testified that a person with the residual
functional capacity the ALJ found to exist could perform certain jobs
existing in significant numbers in the national economy (A.R. 39-40).
The ALJ properly relied on this testimony in denying disability
benefits. <u>See Barker v. Secretary of Health and Human Services</u>, 882
F.2d 1474, 1478-80 (9th Cir. 1989); <u>Martinez v. Heckler</u>, 807 F.2d 771,
774-75 (9th Cir. 1986).

Plaintiff faults the ALJ for rejecting Dr. Pashmforoush's more
restrictive opinions concerning Plaintiff's supposed need for an
assistive device, purported inability to keep Plaintiff's neck in a
constant position, and predicted work absences. The ALJ rejected
these restrictions as "unsupported by any detailed medical findings"
(A.R. 17). Generally, a treating physician's conclusions "must be
given substantial weight." <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th
Cir. 1988); <u>see Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989)
("the ALJ must give sufficient weight to the subjective aspects of a
doctor's opinion. . . . This is especially true when the opinion is
that of a treating physician") (citation omitted); <u>see also Garrison
v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014) (discussing deference
owed to the opinions of treating and examining physicians). Even
///

where the treating physician's opinions are contradicted,[4] "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (citation and quotations omitted).  Contrary to Plaintiff's arguments, the ALJ stated sufficient reasons for rejecting Dr. Pashmforoush's more restrictive opinions.

As the ALJ reasoned, Dr. Pashmforoush's more restrictive opinions were inadequately supported by medical findings in the record. Indeed, the medical findings in the record reflect: (1) non-compliance with medical treatment; (2) complaints of fatigue and dyspnea on exertion, with admissions of methamphetamine abuse and smoking which may well have contributed significantly to these alleged symptoms; (3) "unremarkable" cardiac functioning as of March, 2018, when Plaintiff had a normal ejection fraction of 60 percent; and (4) minimal treatment for leg swelling and pain with compression stockings, with no associated gait impairment or lower extremity strength deficits observed by any treating or examining physician.

---

[4]    Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

1   <u>See</u> A.R. 16-17.

2

3       An ALJ properly may reject a treating physician's opinion where,

4   as here, the opinion is not adequately supported by treatment notes or

5   objective clinical findings.  <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035,

6   1041 (9th Cir. 2008) (ALJ may reject a treating physician's opinion

7   that is inconsistent with other medical evidence, including the

8   physician's treatment notes); <u>Connett v. Barnhart</u>, 340 F.3d 871, 875

9   (9th Cir. 2003) (treating physician's opinion properly rejected where

10  physician's treatment notes "provide no basis for the functional

11  restrictions he opined should be imposed on [the claimant]"); <u>see also</u>

12  20 C.F.R. §§ 404.1527(c), 416.927(c) (factors to consider in weighing

13  treating source opinion include the supportability of the opinion by

14  medical signs and laboratory findings as well as the opinion's

15  consistency with the record as a whole).  The ALJ stated specific and

16  legitimate reasons for rejecting the more restrictive portions of Dr.

17  Pashmforoush's opinions.

18

19      Plaintiff also takes specific issue with the rejection of Dr.

20  Pashmforoush's assertedly uncontradicted opinion that Plaintiff would

21  be absent from work approximately two to three times per month due to

22  his condition/treatment.  <u>See</u> Plaintiff's Motion, p. 10.  While no

23  other medical source specifically and expressly opined regarding

24  predicted work absences, the other physicians' opinions that Plaintiff

25  can perform light work implicitly opined that Plaintiff's condition

26  would not inordinately interfere with his ability to do so.  Under

27  these circumstances, Dr. Pashmforoush's opinion concerning work

28  absences should be deemed to have been contradicted rather than

1  uncontradicted.  See, e.g., Gibson v. Commissioner, 2015 WL 4937415,

2  at *3-4 and n.8 (D. Or. Aug. 18, 2015).  In any event, the ALJ's

3  reference to Dr. Pashmforoush's lack of detailed medical findings

4  constituted an adequate basis to reject this portion of Dr.

5  Pashmforoush's opinion, whether the proper standard is "specific and

6  legitimate" or "clear and convincing."  Dr. Pashmforoush provided no

7  explanation for why or how he determined that Plaintiff would miss so

8  much work due to Plaintiff's impairments or treatment.  Further, there

9  is no indication in the undated "Medical Source Statement, etc."

10  whether Dr. Pashmforoush considered Plaintiff's recent and

11  longstanding methamphetamine abuse when the doctor indicated Plaintiff

12  would be absent two to three times per month.  See A.R. 311 (Dr.

13  Pashmforoush's form opinion indicating absences).[5]  Of course, if this

14  opinion had been impacted by Plaintiff's admitted drug use, the ALJ

15  would have had to factor out Plaintiff's drug addiction in

16  adjudicating Plaintiff's disability claim.  See 20 C.F.R. §§

17  404.1535(b)(2), 416.935(b)(2) (ALJ must determine which of a

18  claimant's physical and limitations would remain if the claimant

19  stopped using drugs or alcohol, then determine whether the claimant's

20  remaining limitations would be disabling).

21

22      To the extent any of the medical evidence is in conflict, it was

23  the prerogative of the ALJ to resolve such conflicts.  See Lewis v.

24  Apfel, 236 F.3d 503, 509 (9th Cir. 2001); see also Treichler v.

25  Commissioner, 775 F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it to

26  _____

27      [5]   By contrast, Dr. Pashmforoush did appear to discount
    Plaintiff's drug and/or alcohol abuse in the 2017 "Medical Source
28  Statement Concerning Drug and/or Alcohol Abuse" (A.R. 267).

14

the ALJ" "to resolve conflicts and ambiguities in the record"). When evidence "is susceptible to more than one rational interpretation," the Court must uphold the administrative decision. <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995); <u>accord</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002); <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997). The Court will uphold the ALJ's rational interpretation of the evidence in the present case notwithstanding any conflicts in the evidence.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 18, 2020.

                                   /S/
                            _____
                            CHARLES F. EICK
                            UNITED STATES MAGISTRATE JUDGE